The Honorable Paul Miller State Senator Post Office Box 488 Melbourne, AR 72556-0488 Dear Senator Miller:
I am writing in response to your request for my opinion on the following question:
 Can a county or municipal government legally hire employees without first offering the positions to the public in some form?
RESPONSE
In my opinion, as a matter of state law, the answer to this question is "yes" for most positions, so long as the consideration for the employment is reasonable and would not amount to an illegal exaction in derogation of Ark. Const. art 16, § 13. However, advertising of openings is statutorily required for certain positions such as police and firefighters in cities having a civil service commission. See A.C.A. §14-51-301(b)(3)(A) (Supp. 2007). Furthermore, under certain circumstances, the failure to advertise a position might expose a city or county to liability under title VII of the Civil Rights Act of 1964, at42 U.S.C. § 2000e et seq. and 42 U.S.C. §§ 1981 and 1983. See Chambersv. Wynne School District, 909 F.2d 1214 (8th Cir. 1990) (entertaining such a challenge).
No provision of the Arkansas Code or Constitution imposes a general requirement that either a county or a city government advertise or otherwise publicize openings before hiring employees. By the same token, no provision of law would preclude officials charged with hiring employees from adopting a policy of advertising *Page 2 
openings. See Ark. Op. Att'y Gen. No. 87-82 (acknowledging that county ordinances might impose a requirement that positions be advertised). With respect to a county, Ark. Const. amend. 55, § 3 provides without qualification that the county judge shall "hire county employees, except those persons employed by other elected officials of the county." In the absence of contrary legislation relating to particular positions, both the county judge and other elected officials may use their discretion in determining whom they will hire and how they will do so. See A.C.A. §14-14-1102(b)(5) (Repl. 1998) (defining, without reference to any advertising or bidding requirement, the scope of the hiring authority of the county judge and other elected officials). This same conclusion applies to city employees. See Ark. Op. Att'y Gen. No. 2006-112
(discussing the general authority of a mayor to hire city employees and of a district court judge to hire court clerks subject to city council approval). Section 14-42-307 of the Code (Repl. 1998), which sets forth the powers and restrictions on power of municipalities, contains no directive that municipal employment be advertised. However, the Code does contain provisions directing that positions under the control of a civil service system be advertised. See A.C.A. §§ 14-49-304(b)(3)(A) (Repl. 1998) (imposing this requirement for cities of 75,000 or over) and14-50-304(b)(3)(A) (Repl. 1998) (imposing this requirement for cities of 20,000 to 75,000).
You have not asked about, and I will address only in passing, the potential consequences of filling positions without advertising their availability. The federal Equal Employment Opportunity Commission has offered the following guidance:
 Title VII is violated by recruiting persons only from largely homogeneous sources if the recruitment practice has a racial purpose, or if it has a significant racial impact and cannot be justified as job related and consistent with business necessity. For example, Title VII might be violated if a municipal employer with an overwhelmingly White population and workforce abuts a major city with an overwhelmingly Black population, but the municipality only hires its own residents and refuses to advertise its jobs in newspapers that circulate in the abutting major city.
http://www.eeoc.gov/policy/docs/race-color.pdf. In a footnote, the EEOC offered the following support for this observation: *Page 3 
 Compare United States v. City of Warren, MI, 138 F.3d 1083, 1094 (6th Cir. 1998) (on similar facts, holding Department of Justice established that municipality's recruiting practices had a disparate impact on Black potential job applicants in violation of Title VII: "Warren's limitation of its applicant pool to residents of the overwhelmingly white city, combined with its refusal to publicize jobs outside the racially homogenous county, produced a de facto
barrier between employment opportunities and members of a protected class. A plaintiff need not identify a sign reading `No Blacks Need Apply' before invoking Title VII."), and NAACP v. Town of Harrison, NJ, 940 F.2d 792, 799-805 (3d Cir. 1991) (affirming lower court's finding that requirement that town employees become residents within one year of hire had unlawful disparate impact on Blacks; town's population was 0.2 percent Black and town had never hired a Black person, though the metropolitan area was home to over 214,000 Blacks, and Blacks made up 22 percent of town's private sector workforce), with NAACP v. City of Bayonne, NJ, 134 F.3d 113, 123-25 (3d Cir. 1998) (upholding finding that the plaintiff did not prove that residency requirement caused disparate impact — statistical evidence was not strong, and city showed that its four-year moratorium on the residency requirement did not raise the number of Black employees).
The question of whether filling a position without advertising its availability might run afoul of title VII is obviously one of fact that only a court could resolve based upon all of the attendant circumstances.
The EEOC further lists the following as "Barriers to Recruitment and Hiring":
 Not knowing where to recruit.
 Failing to advertise widely.
 Recruitment practices that overlook or fail to seek all qualified individuals.
 Reliance on informal networks of recruitment or word-of-mouth. *Page 4 
 Failing to provide reasonable accommodation to qualified individuals with disabilities.
 No formal systems for recruitment.
 Limited pool of targeted groups of persons with required qualifications.
http://www.eeoc.gov/abouteeoc/task_reports/practice.html. Counsel for the individual city or county would be best situated to advise which of these factors should bear on any particular hiring decision.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General *Page 1